DISTRICT OF OREGON: ss, AFFIDAVIT OF ANDREW DRAKOS

# Affidavit in Support of a Criminal Complaint

I, Andrew Drakos, being first duly sworn, hereby depose and state as follows:

## Introduction and Agent Background

1. I am a Task Force Officer with the Federal Bureau of Investigation ("FBI") and a peace officer in the State of Oregon. I have been employed by the Clackamas County Sheriff's Office ("CCSO"), as a Deputy Sheriff since January, 2019. I am currently assigned to the Clackamas County Interagency Task Force ("CCITF"), which primarily investigates controlled substance offenses committed in violation of the Oregon Revised Statutes and U.S. Federal Statutes. Prior to being employed with the CCSO, I was a Commissioned Police Officer for the City of Kelso in Washington State from January 2016 to February 2019. I completed a 720 hour basic law enforcement academy at the BLEA training academy in Burien, Washington. Where I learned about various topics such as but not limited to; drug trafficking, different drug categories, drug familiarization and identification, as well as indicators of drug use. I currently hold an Intermediate Police Certificate from the Oregon DPSST. During my career in law enforcement, I have investigated over 200 drug related cases, interviewed and managed confidential informants, familiarized myself with the possession, distribution and manufacture of controlled substances and executed numerous warrants for evidence related to the sale, use, and trafficking of these controlled substances.

2. This affidavit is based upon a joint investigation conducted by the Clackamas County Interagency Task Force (CCITF) and the Federal Bureau of Investigation (FBI).

## Purpose of Affidavit

3. This affidavit is submitted to support a criminal complaint and arrest warrant for Timothy Jeffrey Monahan, a Caucasian male, date of birth 11/xx/1992 (hereinafter referenced as "**MONAHAN**") for committing the crimes of:

a. Distribution and Possession with Intent to Distribute Cocaine, a Schedule II controlled substance, in violation of Title 21, United States Code, Section 841(a)(1) and 841(b)(1)(C); and,

b. Possession of a Firearm in Furtherance of a Drug Trafficking Crime, in violation of Title 18, United States Code, Section 924(c).

4. I have obtained the facts set forth in this affidavit through my personal participation in the investigation described below; from oral and written reports of other law enforcement officers; and, from records, documents and other evidence obtained during this investigation. I have obtained and read official reports prepared by law enforcement officers participating in this investigation and in other related investigations.

## Summary of Probable Cause

*Background on Investigation*

5. On January 9, 2024, Investigators and I met with SOI[1] who provided investigators with the Telegram username "Yokai" who they believed was selling drugs on the Telegram application, to include selling drugs to juveniles.$Telegram is a free, cloud-based application that

---

[1] This SOI was providing information to law enforcement for consideration on their pending criminal charges. No promises or guarantees were made by investigators to gain the SOI's compliance. The SOI provided Investigators with information against their penal interest and which Investigators could independently verify.

allows users to send encrypted messages, photos, videos, and files, as well as make voice and video calls. Once SOI gave me the Telegram username "Thepdxyokai," CCITF Investigators searched it within the Telegram application. I observed a menu of controlled substances for sale to include LSD, Cocaine, Ketamine, DMT, Psilocybin Mushrooms, vape products, and various Marijuana products.

6. From the time period of January 2024 to June 2024, CCITF Investigators have used various investigative techniques to identify the online Telegram Channel's manager and runners. Investigators completed three independent controlled purchases of Cocaine from ordering through Oregon Yokai Market, and more specifically, the Telegram user "**Yokai.**" These controlled purchases occurred within both Clackamas and Multnomah Counties, in the District of Oregon, during the past six (6) months. The most recent controlled buy occurred within the first week of June 2024. As a result of these controlled buys, Investigators identified "**Yokai**" as Timothy Jeffrey **MONAHAN** and that he was using a female adult runner to deliver drugs for him who is hereinafter referred to as **DRUG RUNNER 1**.

7. During a controlled purchase within the first week of February 2024, Investigators met with a Confidential Informant (hereinafter "**CI-1**")[2] to order a quantity of Cocaine from **Yokai's** Telegram Channel.[3] After an agreement on quantity and price, a location was provided where to

---

[2] Confidential Informant is working with the Clackamas County Interagency Task Force and provided actionable information to law enforcement in exchange for consideration on their pending criminal charges. These charges are to be prosecuted in the State of Oregon of Unlawful Possession of Cocaine. No promises or guarantees were made by investigators to gain CI-1's cooperation. CI-1 also provided information to CCITF against their own penal interests.

[3] During a Controlled Purchase, Investigators maintain constant audio and/or visual surveillance of the CI-1 during the drug deal. Investigators instruct and monitor the informant making contact with the target, provide the money for the controlled purchase, and retrieve the drugs that are purchased by the informant right after the deal.

meet. At this meeting location in Milwaukie Oregon, Investigators identified a runner, **DRUG RUNNER 1**, who delivered Cocaine.

8. During a controlled purchase in February 2024, Investigators ordered a quantity of Cocaine through **MONAHAN** using his online persona "Yokai." Investigators observed **DRUG RUNNER 1** travel directly to **MONAHAN** and retrieve the order of Cocaine from **MONAHAN**, before traveling directly to the deal location in Clackamas Oregon. **DRUG RUNNER 1** delivered Cocaine to an undercover investigator.

9. During a controlled purchase within the first week of June, Investigators met with another Confidential Informant (hereinafter "**CI-2**") to buy a quantity of Cocaine from **MONAHAN**.[4] Investigators observed **CI-2** contact **MONAHAN** at his residence, in Oregon, and complete a drug deal.

10. The suspected Cocaine received from each of the above drug deals, was taken to the Clackamas County Sheriff's Officer and a sample of the substance was subjected to a field test which returned a presumptively positive (+) result for Cocaine, a Schedule II controlled substance.

11. During the investigation, **MONAHAN's** residence was identified at 830 NW Council Drive. Gresham, Oregon (Hereinafter "**Target Residence**"). On June 6, 2024, based upon probable cause that evidence of **MONAHAN**'s drug trafficking activities would be located within his residence, the Honorable Jolie A. Russo, United States Magistrate Judge, District of Oregon,

---

[4] During meetings, CI-2 told Investigators that **MONAHAN** sells drugs to juveniles and CI-2 was personally aware of this. CI-2 is working with the Clackamas County Interagency Task Force and has provided actionable information to law enforcement in exchange for consideration on their pending criminal charges. These charges are to be prosecuted in the State of Oregon of Unlawful Possession of Cocaine, Unlawful Delivery of Cocaine. No promises or guarantees were made by investigators to gain the CI-2's cooperation. CI-2 also provided information to CCITF against their own penal interests.

authorized warrants to search **MONAHAN's** person and the **Target Residence (**Case No. 3:24-mc-00622).

*Search Warrant Execution*

12. On June 7, 2024, around 1350 hours, Investigators contacted **MONAHAN** while he was leaving the **Target Location** in a black Mercedes. **MONAHAN** stated to investigators there was a firearm in his vehicle and provided consent to move the Mercedes back to his driveway. I advised **MONAHAN** of his Constitutional *Miranda* rights which he replied "yes" he understood them. **MONAHAN** provided consent for Investigators to search the black Mercedes.

13. Investigators executed the search warrant on **MONAHAN's** residence and inside, in total, Investigators seized approximately 49 grams of suspected Cocaine, two loaded firearms, packaging material and scales, and approximately $106,300 in U.S. Currency. Below is a summary of some of the items seized from **MONAHAN's** residence**,** as well as pictures of some of the seized items:

- Approximately 29.3 grams of Cocaine, a Schedule II controlled substance (which field tested positive for Cocaine);[5]
- Approximately 20.1 grams of suspected Cocaine in several small clear baggies;
- A loaded Glock 27 .40 caliber pistol, with serial number MFE478 (Found in Monahan's bedroom);
- Approximately $106,300 in U.S. Currency;
- Approximately 4 grams of a yellow crystal substance, untested;

---

5 A sample of this substance was subject to a MobileDetect field test which resulted in a positive (+) detection of Cocaine.

- Packaging materials to include USPS shipping bags, unused small Ziploc style bags, digital scales, vacuum sealer, and money counter; and,
- 11 orange pills marked 3061 (Adderall),[6] a Schedule II controlled substance.






---

6 The imprint on the orange pills "3061" was searched through drugs.com and a match was located as Amphetamine and dextroamphetamine. The brand name associated to this drug is Adderall. Adderall is classified as a Schedule II Controlled Substance.






14. Investigators also searched **MONAHAN's** black 2018 Mercedes and located the following notable items of evidence in the vehicle:

- A loaded Smith and Wesson MP Shield .40 caliber, with serial number HLL7488 / (Found in driver's door of Mercedes) (pictured below);
- Approximately 5.8 grams of suspected Psilocybin Mushroom, a Schedule I controlled substance / (Found in center console), and;
- Two (2) cellphones (Found in center console cupholders).




*Interview of Monahan*

15. I escorted **MONAHAN** to my vehicle and completed an interview with him. I found **MONAHAN** was forthcoming when asked questions and answered in a matter-of-fact way. I learned when **MONAHAN** was taken into custody, he deleted his Snapchat application off of his iPhone (blue case) instead of placing his hands up. When asked why he would do that, **MONAHAN** stated he was "just done using it." **MONAHAN** agreed this appeared suspicious. From my interview with **MONAHAN** I learned the following:

- **MONAHAN** stated he has two handguns and keeps them for protection;
- **MONAHAN** possessed over $100,000 in cash inside of various safes;
- **MONAHAN** stated there was likely over an ounce of Cocaine inside his garage;
- **MONAHAN** admitted he founded Telegram channel "Oregon Yokai Market," and that he used runners to assist in completing drug deliveries;

- **MONAHAN** admitted he did use the Telegram/Snapchat username of "**Yokai;**"
- **MONAHAN** stated he only sells Cocaine now and that he is not gainfully employed;
- **MONAHAN** stated he would sell Alcohol, Marijuana, Psylocibin Mushrooms, Ecstasy, Cocaine, LSD and vape/tobacco products when the Telegram Channel was open;
- **MONAHAN** admitted to selling these items to juveniles. I asked him, if it was fair to say the majority of your customer base is juvenile, which he replied "yeah;"
- Based upon information we received, I asked **MONAHAN** whether he traded controlled substances in return for either sexual acts or sexually explicit photographs from his customers. **MONAHAN** admitted he has done this but offered he verifies the customers are over 18 years old first by having them show their driver's license or ID card.

16. When questioned further about deleting Snapchat and sexually explicit images received over Snapchat, **MONAHAN** requested his right to speak to a lawyer. **MONAHAN** was transported to the Multnomah County Jail in downtown Portland, Oregon and placed on a Federal Hold.

17. I know that Cocaine is typically a white crystalline powder which is often snorted but can also be smoked. Since different weights of Cocaine sell for different amounts, I know that drug dealers selling Cocaine will often possess a scale to weigh the amount of Cocaine they are selling. I also know drug dealers selling Cocaine, which they possess in bulk/larger amounts, will often

possess additional packaging materials to repackage the drugs they are selling to their customer. Depending on their level of addiction, I know that a user of Cocaine will typically buy it in quantities of a gram up to an eighth of an ounce, often referred to as an "eight ball." I know that dealers of Cocaine will often buy Cocaine in larger quantities and then break off and sell it in smaller quantities of a gram or less. I know that a person possessing over 10 grams of Cocaine does not possess it for personal use but rather such a quantity clearly indicates that it is possessed for purposes of further distribution.

18. I have been involved in multiple drug missions targeting drug dealers operating in Portland, Oregon where firearms have been recovered and have talked with other investigators who have also been involved in similar missions where firearms have been recovered. I know from my training and experience that drug traffickers regularly possess firearms as "tools of the trade" in furtherance of their drug trafficking activities for a variety of reasons, to include: First having an accessible gun provides defense against anyone who may attempt to rob the trafficker of their drugs and proceeds; Second, possessing a gun, and letting everyone know that you are armed, lessens the chances that a robbery will even be attempted; Third, having a gun accessible during a transaction provides protection in case a drug deal turns sour; Forth, the visible presence of a gun during the transaction may prevent the deal from turning sour in the first place; and, Fifth, having a gun may allow the drug trafficker to defend the "turf" area from which lower-level dealers operate for the trafficker.

## Conclusion

19. Based on the foregoing, I have probable cause to believe, and I do believe, that (**MONAHAN**) has committed the crimes of Distribution and Possession with Intent to Distribute a Controlled Substance (Cocaine, a Schedule II controlled substance), in violation of Title 21, United States Code, Section 841(a)(1) and 841(b)(1)(C) and Possession of a Firearm in Furtherance of a

Drug Trafficking Crime, in violation of Title 18, United States Code, Section 924(c). (the Target Offenses). I therefore request that the Court issue a criminal complaint and arrest warrant for **Timothy Jeffrey MONAHAN**.

20. Prior to being submitted to the Court, this affidavit, the accompanying complaint, and the arrest warrant were all reviewed by Assistant United States Attorney Scott M. Kerin. AUSA Kerin advised me that in his opinion the affidavit and complaint are legally and factually sufficient to establish probable cause to support the issuance of the requested criminal complaint and arrest warrant.

*By phone pursuant to Fed R. Crim. P. 4.1*
Deputy Andrew Drakos
Task Force Officer
Federal Bureau of Investigation

Subscribed and sworn in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone at 10:40 a.m./~~p.m.~~ on June 9, 2024.

Jolie A. Russo
HONORABLE JOLIE A. RUSSO
UNITED STATES MAGISTRATE JUDGE