NATALIE K. WIGHT, OSB #035576
United States Attorney
District of Oregon
**SCOTT M. KERIN, OSB # 965128**
Assistant United States Attorney
Scott.Kerin@usdoj.gov
1000 S.W. Third Avenue, Suite 600
Portland, OR 97204-2902
Telephone: (503) 727-1000
Attorneys for United States of America

**UNITED STATES DISTRICT COURT**

**DISTRICT OF OREGON**

**PORTLAND DIVISION**

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **3:24-mj-00118** |
| **v.** | **GOVERNMENT'S MOTION FOR PRETRIAL DETENTION** |
| **TIMOTHY JEFFREY MONAHAN,** | |
| **Defendant.** | |

The United States of America, through Natalie K. Wight, United States Attorney for the District of Oregon, and Scott M. Kerin, Assistant United States Attorney, hereby asks the Court to detain defendant pending arraignment and trial.

**A. Factual and Procedural Summary.**

Defendant was selling drugs to kids and made a substantial sum of money doing so. Defendant is currently charged in a criminal complaint with the distribution and possession with the intent to distribute a controlled substance (cocaine), in violation of 21 U.S.C. § 841(a)(1) and 841(b)(1)(C), and possession of a firearm in furtherance of a drug trafficking crime, in violation

of 18 U.S.C. § 924(c). The felony drug charge carry a maximum sentence of 20 years' imprisonment. The firearm offense carries a mandatory minimum sentence of 5 years' imprisonment and a maximum sentence of life imprisonment.

Earlier this year, Investigators with the Clackamas County Interagency Task Force (CCITF) and Federal Bureau of Investigation (FBI) received information that an individual using with the username "Yokai" was advertising and selling drugs on through Telegram. Telegram is a free, cloud-based application that allows users to send encrypted messages, photos, videos, and files, as well as make voice and video calls. CCITF Investigators found "Yokai's" Telegram channel and observed a menu of controlled substances for sale to include cocaine, LSD, Ketamine, DMT, Psilocybin Mushrooms, vape products, and various marijuana products.

Between January 2024 and June 2024, in an effort to identify "Yokai," CCITF Investigators completed three independent controlled purchases of cocaine from ordering through "Oregon Yokai Market," and more specifically, the Telegram user "Yokai." These controlled purchases occurred within both Clackamas and Multnomah Counties, in the District of Oregon. The most recent controlled drug buy occurred within the first week of June 2024. Through these controlled buys, Investigators were able to identify "Yokai" as Timothy Jeffrey MONAHAN and learned that he was using a female adult runner to deliver drugs for him. The female adult runner has been arrested and admitted delivering drugs for MONAHAN and that the majority of his customers were juveniles.

On June 6, 2024, based upon probable cause that evidence of MONAHAN's drug trafficking activities would be located within his residence, the Honorable Jolie A. Russo, United States Magistrate Judge, District of Oregon, authorized a federal warrant to search MONAHAN's residence on NW Council Drive, Gresham, Oregon (Case No. 3:24-mc-00622).

On June 7, 2024, Investigators contacted MONAHAN while he was leaving his house in a black Mercedes. MONAHAN stated to investigators there was a firearm in his vehicle and provided consent to move the Mercedes back to his driveway. MONAHAN was advised of his Constitutional *Miranda* rights which he replied "yes" he understood them. MONAHAN provided consent for Investigators to search the black Mercedes.

Investigators executed the search warrant on MONAHAN's residence and inside, in total, Investigators seized approximately 49 grams of suspected cocaine, two loaded firearms, packaging material and scales, and approximately $106,300 in U.S. Currency. Below is a summary of some of the items seized from MONAHAN's residence, as well as pictures of the seized items:

- Approximately 29.3 grams of cocaine, a Schedule II controlled substance (which field tested positive for Cocaine);
- Approximately 20.1 grams of suspected cocaine in several small clear baggies;
- A loaded Glock 27 .40 caliber pistol, with serial number MFE478 (Found in Monahan's bedroom);
- Approximately $106,300 in U.S. Currency;
- Approximately 4 grams of a yellow crystal substance, untested;
- Packaging materials to include USPS shipping bags, unused small Ziploc style bags, digital scales, vacuum sealer, and money counter; and,
- 11 orange pills marked 3061 (Adderall),[1] a Schedule II controlled substance.

///

---

[1] The imprint on the orange pills "3061" was searched through drugs.com and a match was located as Amphetamine and dextroamphetamine. The brand name associated to this drug is Adderall. Adderall is classified as a Schedule II Controlled Substance.




TOSHIBA




EVIDENCE
EVIDENCE
EVIDENCE
EVIDENCE
EVIDENCE

///

Investigators also searched **MONAHAN's** black 2018 Mercedes and located the following notable items of evidence in the vehicle:

- A loaded Smith and Wesson MP Shield .40 caliber, with serial number HLL7488 (Found in driver's door of Mercedes) (pictured below);
- Approximately 5.8 grams of suspected Psilocybin Mushroom, a Schedule I controlled substance / (Found in center console), and;
- Two (2) cellphones (Found in center console cupholders).




During an interview MONAHAN told investigators that:

- MONAHAN stated he has two handguns and keeps them for protection;
- MONAHAN possessed over $100,000 in cash inside of various safes;
- MONAHAN stated there was likely over an ounce of cocaine inside his garage;
- MONAHAN admitted he founded Telegram channel "Oregon Yokai Market," and that he used runners to assist in completing drug deliveries;

- MONAHAN admitted he did use the Telegram/Snapchat username of "Yokai;"
- MONAHAN stated he only sells cocaine now and that he is not otherwise gainfully employed;
- MONAHAN stated he would sell alcohol, marijuana, Psylocibin Mushrooms, Ecstasy, cocaine, LSD and vape/tobacco products when the Telegram Channel was open;
- MONAHAN admitted to selling these items to juveniles. When an Investigator asked him if it was fair to say the majority of his customer base is juvenile, MONAHAN replied "yeah."

Based upon information Investigators received, Investigators also asked MONAHAN whether he traded controlled substances in return for either sexual acts or sexually explicit photographs from his customers. MONAHAN admitted he has done this but then stated he verifies the customers are over 18-years old first by having them show their driver's license or ID card.

Based upon the nature of the charges and defendant's personal history and characteristics the government seeks the defendant's detention as a danger to the community and a risk of nonappearance.

**B. Applicable Law.**

**1. Rules of Evidence Do Not Apply at Detention Hearing**

The Federal Rules of Evidence do not apply in pretrial detention proceedings. Fed. R. Evid. 1101(d)(3); 18 U.S.C. § 3142(f). Accordingly, both the government and the defense may present evidence by proffer or hearsay. *United States v. Winsor*, 785 F.2d 755, 756 (9th Cir. 1986); *see also United States v. Bibbs*, 488 F.Supp.2d 925, 925-26 (N.D.Cal. 2007).

### 2. Rebuttable Presumption of Detention

Under the Bail Reform Act, 18 U.S.C. § 3142, *et seq.*, which governs the detention of a defendant pending trial, the Court shall order a defendant detained if, after a hearing, it finds that "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." Generally, the United States bears the burden of establishing danger to the community by clear and convincing evidence; risk of flight need only be proved by a preponderance of the evidence. *United States v. Aitken*, 898 F.2d 104, 107 (9th Cir. 1990); *Winsor*, 785 F.2d at 757.

Where there is probable cause to believe that the defendant committed a Title 21 narcotics offense and the maximum penalty for that offense is a term of imprisonment of 10 years or more, or a violation of Title 18, United States Code, Section 924(c), the law creates a presumption that no condition or combination of conditions of release will reasonably assure the appearance of the person as required and the safety of the community. 18 U.S.C. § 3142(e)(3)(A) and (B). In such a case, the burden of proof shifts to the defendant to rebut the presumption of detention. *United States v. Carbone*, 793 F.2d 559, 560 (3rd Cir. 1986). The criminal charges in this case create a presumption of pretrial detention.

Concern about the safety of the community is not limited to concerns about violence; rather it is the *risk* that a defendant will continue committing crimes while on release, such as drug dealing, that warrants their continued detention as a danger to the community:

> [T]he language referring to the safety of the community refers to the danger that the defendant **might** engage in criminal activity to the detriment of the community. The committee intends that the concerns about safety be given a broader construction than merely danger of harm involving physical violence. This principal was recently endorsed in *United States v. Provenzano and Andretta*, in which it was held that the concept of 'danger' . . . extended to nonphysical harms such as corrupting a union. **The committee also emphasizes that the risk that a defendant**

> **will continue to engage in drug trafficking constitutes a danger to the "safety of any other person or the community."**

S.REP. NO. 98-225, 98th Cong., 1st Sess. (1983), *reprinted in* 1984 U.S.C.C.A.N 3182, 3195 (Bail Reform Act)(emphasis added); *see also United States v. Hare*, 873 F.2d 796, 798-99 (5th Cir.1989)(Congress has determined "that drug offenders pose a special risk of flight and dangerousness to society.").

The Senate Report further explained *why* they created the presumption that there was no condition or combination of conditions of release that will reasonably assure the appearance of drug dealers or the safety of the community:

> These [the crimes outlined in 18 U.S.C. § 3142(e)] are serious and dangerous federal offenses. The drug offenses involve either trafficking in opiates or narcotic drugs, or trafficking in large amounts of other types of controlled substances. It is well known that drug trafficking is carried on to an unusual degree by persons engaged in continuing patterns of criminal activity. Persons charged with major drug felonies are often in the business of importing or distributing dangerous drugs, and thus, **because of the nature of the criminal activity with which they are charged, they pose a significant risk of pretrial recidivism**.

S.REP. NO. 98-225, 98th Cong., 1st Sess. (1983), *reprinted in* 1984 U.S.C.C.A.N. 3182, 3203 (Bail Reform Act) (emphasis added).

The presumption in favor of detention, as both a flight risk and danger to the community, does not vanish if a defendant comes forward with some evidence to rebut it, but rather it remains an evidentiary factor to be evaluated. *United States v. Jessup*, 757 F.2d 378, 384 (1st Cir.1985); *see also United States v. Rueben*, 974 F.2d 580, 586 (5th Cir.1992); *United States v. Rodriguez*, 950 F.2d 85, 88 (2nd Cir.1991); *United States v. Hare*, 873 F.2d 796, 798 (5th Cir.1989). Were the presumption to vanish, "courts would be giving too little deference to Congress' findings regarding this class." *United States v. Martir*, 782 F.2d 1141, 1144 (2nd Cir.1986).

///

The degree of danger posed by a defendant charged with narcotics trafficking is critical. *United States v. Leon*, 766 F.2d 77, 81 (2nd Cir. 1985). To determine that degree and decide if a defendant should be detained pending trial, a judicial officer must look to the nature and circumstances of the crime charged; whether the crime involved violence or drugs; the personal history of the person, the seriousness of the danger posed by the person's release; and, the evidence of the individual's guilt. *Id.* Evidence of defendant's family ties in the area, residence in the community and employment history should have no bearing on the court's determination of dangerousness and cannot rebut the presumption that arises under the statute. *See* S. Rep. No. 225, 98th Cong., 1st Sess. 24 (1983) (minimizing community ties and pointing to the "growing evidence that the presence of this factor does not necessarily reflect a likelihood of appearance, and has no correlation with the question of the safety of the community.").

If the defendant proffers evidence to initially rebut the presumption of dangerousness or risk of non-appearance, the Court should then examine the following four factors in deciding whether release is appropriate:

> (1) the nature and circumstances of the offense charged, including whether the offense . . . involves . . . a controlled substance . . . ;
>
> (2) the weight of the evidence against the person;
>
> (3) the history and characteristics of the person, including –
>
> > (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearances at court proceedings; and
> >
> > (B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal . . . ; and

///

(4) the nature and seriousness of the danger to any person or the community that would be posed by the defendant's release.

18 U.S.C. § 3142(g).

**C. Factors Supporting Detention.**

The Court should detain defendant pending trial as both a danger to the community and a risk of nonappearance. Defendant had one job – selling drugs, primarily to kids, and he made a lot of money doing so. Defendant is now pending serious federal charges and additional charges are likely forthcoming based upon the information gathered through the search warrant and his interview. Defendant is currently facing a mandatory minimum sentence of five years of federal imprisonment. Defendant’s history and statements demonstrate that he is a danger to the community and a risk of nonappearance and he should be detained.

**1. Nature and Circumstances of the Offense.**

The defendant was selling drugs to kids. Drug dealing, by itself, is destructive to the community and selling drugs to kids is particularly dangerous. Drug dealers like the defendant are exactly the people Congress warned us about and why they created the presumption of detention in these cases. Drug dealers historically make their living from selling drugs – as this defendant did – and are prone to go back to it when they are released from custody. That high risk of pretrial recidivism warrants defendant’s continued pretrial detention.

**2. Weight of the Evidence.**

The weight of the evidence against the defendant is extremely strong and supports his continued detention. The proof against the defendant is outlined above – the defendant advertised drugs, he sold drugs to an undercover deputy, he was caught with cocaine and two handguns, and he admitted selling drugs. The case against the defendant is strong and he should be detained.

**3. History and Characteristics of the Defendant.**

The history and characteristics of the defendant also warrants his pretrial detention. The defendant was a drug dealer who targeted and sold drugs to kids. By his own admission he did not have a legitimate job. He should be detained.

**4. Nature and Seriousness of the Danger to the Community.**

The defendant's drug dealing activities, by themselves, are extremely serious. Given the presumption of detention that comes along with the charges, Congress has recognized the very serious risk that drug dealers like the defendant pose to the community and his risk of going back to drug dealing even while on pretrial release. There is simply no condition or combination of conditions that the Court will impose that will sufficiently mitigate the risk that the defendant will go back to distributing drugs within the community. The defendant should be detained.

**Conclusion**

For the reasons set forth herein, we respectfully request that the Court detain the defendant pending his trial and find he poses an unacceptable risk of non-appearance at future court hearings and is a danger to the community.

We ask the Court to find that:

- The charged offenses create a rebuttable presumption in 18 U.S.C. § 3142(e) that no combination of conditions will (1) reasonable assure the safety of the community and (2) reasonably assure the appearance of the defendant as required.

- The defendant has not rebutted, by sufficient evidence to the contrary, the presumption of detention provided in 18 U.S.C. 3142(e).

- Furthermore, due to the nature of the offenses and the extreme dangers posed by the defendant's drug trafficking, there is no condition or combination of conditions that will reasonably assure the safety of other persons and the community if the defendant were released.

- Due to the weight of the evidence and the defendant's personal history and characteristics, including the potential penalties he is facing on the current

charges, no condition or combination of conditions will reasonably assure the appearance of the defendant at future court hearings as required if he was released from custody.

Based upon the above findings, the defendant should be detained pending trial.

Dated: June 10, 2024.

Respectfully submitted,

NATALIE K. WIGHT
United States Attorney

/s/ Scott Kerin

SCOTT M. KERIN, OSB # 965128
Assistant United States Attorney